1

2

3

4

5

6

7      IN THE UNITED STATES DISTRICT COURT

8      FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11    VALLAVISTA CORPORATION,
       a California corporation,

12                                                          No. C 07-05360 WHA

13              Plaintiff,

14       v.
                                                            **ORDER GRANTING**
15    AMAZON.COM, INC., a Delaware corporation,             **IN PART AND DENYING**
       TARGET CORPORATION, a Minnesota                      **IN PART TARGET**
16    corporation, EBAGS, INC., a Colorado                  **CORPORATION'S**
       corporation, EMPORIUM LEATHER                        **MOTION FOR**
17    COMPANY, INC., a New Jersey corporation,              **SUMMARY JUDGMENT**
       doing business as ROYCE LEATHER, and
18    FASHION HANDBAGS, INC., a Nevada
       corporation, doing business as BO BO BAGS,

19
                Defendants.
20    _____/

21

22                            **INTRODUCTION**

23              In this trademark infringement case, defendant Target Corporation moves for summary

24    judgment.  For the reasons stated below, defendant's motion is **GRANTED IN PART AND DENIED**

25    **IN PART**.

26

27

28

**United States District Court**
For the Northern District of California

**STATEMENT**

Plaintiff Vallavista designs and sells quality leather products.  Vallavista alleges it has rights to the common law word mark TAXI WALLET.  Vallavista is the registered owner of the trademark for the following logo:



Vallavista registered the logo mark in 1996 (U.S. Registration No. 2,008,495), and the Trademark Office required that Vallavista disclaim the "wallet" portion of the mark. Vallavista has sold and marketed wallet products under the word and logo marks since at least 1996.  The TAXI WALLET brand goods are sold in fine retail boutiques and specialty stores in the United States and internationally.  Vallavista has advertised in catalogs, magazines, television, trade shows, and on its own website.  The TAXI WALLET brand wallets retail on average for $49.  The company spent $243,000 on advertising and had sales of $1.7 million.

Periodically, the company ran web searches to police any unauthorized use of the TAXI WALLET marks.  When doing one such search in May 2007, Vallavista discovered Target's use of the words "taxi wallet" with Target's ISAAC MIZRAHI brand wallets at www.target.com.  After receiving a cease-and-desist letter, Target agreed to remove "taxi wallet" from its website.  During another search using the keyword "taxi wallet" in October 2007, however, Vallavista again discovered Target's ISAAC MIZRAHI brand wallets at www.target.com, www.amazon.com, and www.google.com.

Target operates discount department stores offering a variety of merchandise, including women's fashion items under third-party national brands and house brands.  In early 2007, Target was offered leather goods from one of its vendors, Westport Corporation. Westport supplied item descriptions for the accused wallets that included the words "taxi wallet," which were entered into Target's internal database.  The item descriptions were (1) navy turn lock taxi wallet, (2) black turn lock taxi wallet, and (3) IM sign taxi wallet.

2

United States District Court

For the Northern District of California

For zoning purposes, the wallet's item description (*e.g.*, "clutch," "billfold," or "taxi wallet") was extracted from Target's database and appeared on the bar code label affixed to the shelf where the accused ISAAC MIZRAHI brand wallets were displayed. "Taxi wallet" did not appear on the wallets themselves or any packaging for the wallets. The ISAAC MIZRAHI brand appeared on the wallets and on a tag hanging from the wallets. The accused wallets were offered in Target stores and on websites during the spring and fall of 2007.

On October 19, 2007, Vallavista filed this action alleging trademark infringement under 15 U.S.C. 1114, unfair competition and false designation of origin under 15 U.S.C. 1125(a), trademark dilution under 15 U.S.C. 1125(c), common law unfair competition, and unfair competition under California Business and Professions Code Section 17200. In this motion, Target now moves for summary judgment as to all claims or, in the alternative, for summary adjudication that plaintiff is not entitled to damages.

**1.    LEGAL STANDARD.**

Under FRCP 56(c), summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Summary judgment is not granted if the dispute about a material fact is "genuine" — that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. The evidence, and all reasonable inferences therefrom, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The moving party "has both the initial burden of proof and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

**2.    EVIDENTIARY OBJECTIONS.**

Target relies on a declaration of Robert Caruso in support of its motion for summary judgment. Vallavista contends that the declaration is inadmissible because the declaration

3

1    does not show that Caruso had personal knowledge and competency to testify to all facts in

2    the declaration.  Vallavista concedes that Caruso may competently testify regarding the

3    purchase and sale of the accused wallets, but Vallavista disputes that he may state facts

4    regarding marketing distribution and a licensor's trademark registrations.  This order finds that

5    evidence must be weighed by a jury to determine the genericness and likelihood of confusion

6    where such facts may be relevant.  This order does not rely on Caruso's declaration to grant

7    summary judgment to Target on dilution.  Accordingly, this evidentiary objection is a moot

8    issue.

9         Vallavista also asserts that Target's motion should be denied because the evidence in

10   the declaration of attorney Jennifer Lee Taylor "is not enough to prove Vallavista cannot meet

11   its evidentiary burdens at trial."  While an attorney declaration testifying as to facts is generally

12   not allowed, Target's motion for summary judgment was denied on other grounds where this is

13   an issue and, thus, this evidentiary objection is also moot.

**3.     TRADEMARK INFRINGEMENT.**

**A.     Trademark Validity.**

16        Plaintiff alleges that defendant's use of TAXI WALLET constitutes trademark

17   infringement, false designation of origin, and unfair competition.  To successfully maintain

18   an action for trademark infringement, false designation of origin, and unfair competition under

19   the Lanham Act or California law, plaintiff must show that it has a valid trademark and that

20   defendant's use of the mark is likely to cause confusion.  Validity of the trademark is a

21   threshold question because there can be no infringement of an invalid mark.  *See Thane Int'l v.*

22   *Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002); *Brookfield Communs. v. W. Coast*

23   *Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).[1]

24        In its opening brief, Target argues that the common law term TAXI WALLET is

25   generic.  Trademarks are categorized as generic, descriptive, suggestive, and arbitrary or

26   fanciful.  Whether a mark is generic is a question of fact.  *See Yellow Cab Co. v. Yellow Cab of*

27   *Elk Grove, Inc.*, 419 F.3d 925, 928–29 (9th Cir. 2005).

28

[1] Unless otherwise noted, internal citations and quotations have been omitted from citations.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    The parties dispute who has the burden of proving genericness.  This order finds that

2    Vallavista has the burden of proving that the unregistered TAXI WALLET word mark is not

3    generic.  "When a plaintiff pursues a trademark action involving a properly registered mark,

4    that mark is presumed valid, and the burden of proving that the mark is generic rests upon the

5    defendant.  However, if the disputed term has not been federally registered, and the defendant

6    asserts genericness as a defense, the burden shifts to the plaintiff to show that the mark is

7    nongeneric." *Id.* at 927.

8    Genericness may be determined by referring to the "who-are-you/what-are-you" test.

9    "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?'

10   'Who vouches for you?' But the generic name of the product answers the question 'What are

11   you?'" *Id.* at 929.  Courts look to whether consumers understand the word to refer only to a

12   particular producer's good or whether the consumer understands the word to refer to the goods

13   themselves.  If the primary significance of the trademark is to describe the type of product

14   rather than the producer, the trademark is a generic term and cannot be a valid trademark.

15   Courts also look at whether competitors use the mark, use by the media, and plaintiff's own use

16   of the mark. Courts view a mark's use by competitors as "strong evidence of how the public

17   perceives the term." *See Classic Foods Int'l Co. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181,

18   1189–91 (C.D. Cal. 2007).

19   To support its genericness argument, Target points to an example of a consumer

20   commenting on a website and eBay sellers referring to a "taxi-style wallet."  In addition,

21   the website www.aboutwallets.com described a "taxi wallet" as a particular style of wallet.

22   The website stated that "[t]he original taxi wallet stowed away very discreetly" but noted that

23   "[t]here are plenty of different manufacturers to choose from."

24   Target has also pointed to competitors' use of "taxi wallet" to describe competing

25   products.  Vallavista concedes that other retailers used "taxi wallet" when selling other wallets.

26   Vallavista has sent out somewhere between 25 and 30 letters and emails and called others to

27   dissuade them from using the term "taxi wallet" to describe competing products.  Vallavista

28   also claims that none of the retailers objected to ceasing use of "taxi wallet."

1    Vallavista counters that the primary significance of "taxi wallet" is to describe the

2 producer of the wallet (Vallavista), not to describe the corresponding product (the wallet).

3 Vallavista also argues that Target has not shown that there is a different meaning to consumers

4 or established that use by competitors has eliminated the public's association of the mark with

5 Vallavista.

6    Viewing Vallavista's allegations in a light most favorable to Vallavista, there is a

7 genuine issue of material fact as to whether the TAXI WALLET word mark is generic.  To the

8 extent that Target also contends the TAXI WALLET logo mark is generic, the same issues

9 apply and a triable issue of fact exists.

10    **B.    Likelihood of Confusion.**

11    The core element of trademark infringement is the likelihood of confusion, *i.e.,*

12 whether the similarity of the marks is likely to confuse customers about the source of the

13 products.  In the Ninth Circuit, district courts weigh eight non-exclusive factors when

14 determining the likelihood of confusion between related goods:  (1) strength of the mark;

15 (2) similarity of the marks; (3) proximity or relatedness of the goods; (4) type of goods and

16 the degree of care likely to be exercised by the purchaser; (5) marketing channels used;

17 (6) defendant's intent in selecting the mark; (7) evidence of actual confusion; and (8) likelihood

18 of expansion of the product lines.  *See M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d

19 1073, 1080 (9th Cir. 2005) (citing *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.

20 1979)).

21    Some factors are much more important than others and the importance of each factor

22 will be case-specific.  Most of these so-called *Sleekcraft* factors are questions of fact.  *See Cliks*

23 *Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001).

24    In construing the evidence in favor of the nonmoving party as required, there are

25 genuine issues of material fact that preclude summary judgment for Target.  While some of the

26 *Sleekcraft* factors favor Target, others favor Vallavista.  For example, the marketing channels

27 used factor favors Vallavista in light of the fact that both parties use the internet to market their

28 goods.  A jury will have to weigh the factors.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

### 4.   DILUTION.

Target also moves for summary judgment on plaintiff's claim of dilution, contending that Vallavista's mark is not famous.  Dilution is the "lessening of the capacity of a famous mark to identify and distinguish goods or services" regardless of likelihood of confusion.  *See* 15 U.S.C. 1127.  In addition to establishing the identity or near identity of the marks, a party alleging dilution must satisfactorily prove that "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark."  *Thane Int'l Inc.*, 305 F.3d at 907.

Because we determine that a reasonable fact-finder could not find the TAXI WALLET marks are famous, we do not evaluate beyond the first prong of this inquiry.  Vallavista has not pointed to any evidence in the record to create a triable issue.

The Ninth Circuit has a narrow definition of fame.  The mark at issue must be so prominent and renowned as to be a household name.  *See id.* at 911.  To determine whether a mark is famous, 15 U.S.C. 1125(c)(2)(A) provides a non-exclusive list of factors that may be considered:

> (i)    The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii)   The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii)  The extent of actual recognition of the mark.
>
> (iv)  Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008).  To satisfy the fame requirement, a trademark owner must demonstrate that the mark is "widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner."  15 U.S.C. 1125(c)(2)(A).

Vallavista bases its claim of fame on assertions in a declaration provided by its president and co-founder.  With regard to the first factor, Vallavista has used the mark since at least 1996.

7

United States District Court

For the Northern District of California

1   With regard to the second factor, Vallavista has advertised at trade shows, online, television,

2   nationwide retailers, and its own store location.  According to Vallavista, it had advertising

3   expenditures of at least $243,000 since October 2004 and sales of $1.7 million from October 1,

4   2004 through June 1, 2008.  Vallavista has not pointed to any actual consumer recognition for

5   the third factor.  With regard to the fourth factor, the TAXI WALLET logo mark was registered

6   in 1996 and the TAXI WALLET word mark is not currently registered.

7   These assertions are not sufficient for Vallavista to meet its burden in proving its logo

8   mark was famous.  Although not dispositive, Vallavista has not provided any survey evidence

9   of actual recognition.  While Vallavista has noted its advertising forums, this does not by itself

10   constitute evidence that the TAXI WALLET marks are famous.  *See Thane Int'l.*, 305 F.3d at

11   911 (finding the trademark owner failed to present evidence from which a reasonable fact-finder

12   could find fame despite the mark appearing in advertisements with a famous person, in large

13   circulation newspapers and on Wheaties boxes).

14   Vallavista has not provided even the minimum degree of evidence from which a jury

15   could reasonably determine its marks were famous prior to Target's use in February 2007.

16   Vallavista's sales of $1.7 million and advertising expenditures of $243,000 includes income

17   and expenses after Target began use in February 2007.  Vallavista's sales revenue averages

18   less than $425,000 per year and the advertising expenditures average $60,750 per year.  Even if

19   Vallavista provided figures for only the relevant time period, a reasonable fact-finder could not

20   find the TAXI WALLET marks are famous based on those figures.  *See Avery Dennison Corp.*

21   *v. Sumpton*, 189 F.3d 868, 877 (9th Cir. 1999) (concluding that the trademark owner failed to

22   prove its marks were famous despite using the mark for 60 years and spending $5 million per

23   year in advertising).  Only a select class of marks are considered famous, and Vallavista has not

24   shown that it owns a select mark that is considered a household name.

25   Vallavista has not rebutted Target's proffer of widespread use of the words "taxi wallet"

26   by third parties.  Such common use weighs against a finding of fame.  *See, e.g., Thane*, 305 F.3d

27   at 912 (noting widespread use of the word "trek" in the "Star Trek" television and movie

28   series).

8

Vallavista's TAXI WALLET logo mark and word mark are not sufficiently famous. This order concludes that Vallavista's dilution claim cannot succeed. Besides fame, Vallavista failed to even address the other dilution factors. Target's motion for summary judgment on dilution is **GRANTED.**[2]

**5.     DAMAGES.**

**A.     Lost Sales.**

Target argues that Vallavista cannot recover for its alleged lost sales or actual damages. Target contends that Vallavista's purported lost profits of $14.56 per wallet that Target sold at $9.99 is speculative. Target argues that the jury could be asked to assume that everyone who purchased a $9.99 Target wallet would have bought a Vallavista wallet. "Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993). *Lindy Pen* held that "an inability to show actual damages does not alone preclude a recovery under Section 1117" and thus other evidence may fill the gap. 982 F.2d at 1411. Other Ninth Circuit decisions have also concluded that damages are permitted based on the totality of circumstances. *See, e.g., Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145–46 (9th Cir. 1997). In light of the fact that Vallavista need not show actual damages, Target has not demonstrated how Vallavista's theory of lost sales or actual damages is speculative. A jury will have to decide.

**B.     Defendant's Profits.**

Target also contends that there is no evidence of willful infringement and, thus, Vallavista cannot recover Target's profits. Willful infringement is required when the plaintiff seeks the defendant's profits. *See Lindy Pen*, 982 F.2d at 1407–09. A genuine issue of material fact exists as to whether Target willfully infringed Vallavista's marks.

Target's motion for summary judgment on damages is **DENIED**.

---

[2] Because Target's motion for summary judgment on the dilution claim is granted, Target's assertion that plaintiff cannot recover for its dilution claim is not addressed in this order.

<div style="writing-mode: vertical-rl">**United States District Court**
For the Northern District of California</div>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, Target's motion for summary judgment as to dilution is **GRANTED**.  Target's motion for summary judgment as to all other claims and damages is **DENIED**.

\*          \*          \*

To update counsel on the trial date, the Court is going to try to squeeze the trial in the instant case in as the last trial before a long capital prosecution that will begin on February 23, 2009.  The trial date in the instant case has already been reset for February 2.  This is chiefly subject only to other criminal trials, which must take priority.  At the moment, please be advised that another criminal trial is pending for early February and may require the instant case to go over.  Nonetheless, counsel must prepare to try the case on the date indicated.

**IT IS SO ORDERED.**

Dated:  December 11, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE